IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PJI DISTRIBUTION CORP.,** : | |
| : | |
| **Plaintiff,** : | |
| vs. : | **CIVIL NO. 07-1551** |
| : | |
| **TOP OF THE LINE** : | |
| **OFFICE FURNITURE, et al.,** : | |
| : | |
| **Defendants.** : | |

**RUFE, J.**                                                                                                        September 4, 2007

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Defendants' Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). After reviewing the briefs, the applicable law, and the entire record in this case, the Court will grant in part and deny in part both Motions, for the reasons stated below.

**BACKGROUND**

This case is based on a failed sale of office furniture. When the relevant parties contracted to sell the furniture, it was stored at the Atlanta, Georgia offices of Ernst & Young. Plainitff PJI Distribution Corporation, the would-be buyer, sued five Defendants, who had allegedly become joint venturers for the specific purpose of selling the furniture. PJI is a citizen of Pennsylvania, and all five Defendants are citizens of other states.[1] The Defendants have specially

---

[1] There is no dispute that this Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1332(a).

appeared for the sole purpose of challenging this Court's exercise of personal jurisdiction and venue. In reviewing a motion to dismiss for lack of personal jurisdiction, the Court "'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"[2]

On November 6, 2006, two commercial entities and their officers formed a joint venture to acquire and resell the Ernst & Young furniture.[3] One of the entities, Top of the Line Furniture ("TOL"), is a South Carolina sole proprietorship, operated by Brian Jacobs and Doug Smith—both citizens of South Carolina.[4] The other entity, National Furniture Brokers, LLC ("NFB"), is a Mississippi limited-liability company operated by Robert Barefield—a citizen of Mississippi.[5] Both TOL and NFB, along with Jacobs, Smith, and Barefield, entered into the joint venture to acquire and sell the furniture.[6]

In January 2007, TOL contacted Tony Guhr to ask for his help in finding a buyer for the furniture.[7] Guhr is President of AdTech International, Inc., a Kansas Corporation with its principal place of business in Kansas.[8] Guhr then contacted potential buyer Ira Pressman in Pennsylvania.[9] Ira Pressman is the president and chief operating officer of PJI Distribution

---

[2] Telcordia Tech, Inc. v. Telcom SA Ltd., 458 F.3d 172, 176 (3d Cir. 2006) (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

[3] Pressman Aff. [Doc. # 6] Ex. 5.

[4] Id.

[5] Id.

[6] The Court notes that although Plaintiff provided a copy of a Joint Venture Agreement between the five Defendants, all five of the signature lines are blank. Nonetheless, for the purposes of this Motion, the Court assumes that the five Defendants have entered into a joint venture to sell the furniture.

[7] Mem. of Law in Support of Defs.' Mot. to Dismiss [Doc. # 2], at 5.

[8] Guhr Aff. ¶ 2.

[9] Pressman Aff. ¶ 5.

Corporation, a Pennsylvania corporation with its principal place of business in Bryn Mawr, Pennsylvania.[10]

Shortly thereafter, Smith called Pressman to describe the furniture and invite him to Atlanta to inspect it.[11] On February 2, 2007, Smith also emailed Guhr, stating, inter alia, that the furniture was "purchased and installed in 1997–1998."[12] Guhr forwarded this email to Pressman.[13] On February 8, 2007, Pressman flew to Atlanta and inspected the furniture.[14] The next day, Barefield sent Pressman a follow-up email, telling him that he looked forward to working together on the sale of the furniture.[15]

A few days later, on February 16, 2007, Pressman sent TOL a purchase order, in which PJI offered to buy the furniture for $230,000.[16] Under the terms of the offer, PJI would wire its deposit of $115,000, which would be held in a "constructive trust,"[17] until PJI removed the

---

[10] Id. ¶ 1; Compl. ¶ 1.

[11] Pressman Aff. ¶ 5. Defendants appear to dispute this fact. Although Smith does not specifically deny making this call in his affidavit, according to Jacobs' affidavit, Pressman "initiated contact with TOL" after learning about the furniture from Guhr. Jacobs Aff. ¶ 4.

[12] Pressman Aff., Ex. 1.

[13] Id. ¶ 7.

[14] Pl.'s Mem. in Opp'n [Doc. # 5-3], at 2.

[15] Pressman Aff. Ex. 2.

[16] Id. Ex. 3; Compl. Ex. A.

[17] Both PJI and Defendants use the term "constructive trust" in a manner with which the Court is not familiar. According to Black's Law Dictionary, a constructive trust is: "An equitable remedy that a court imposes against one who has obtained property by wrongdoing." Black's Law Dictionary 1547 (8th ed. 2004). The Court presumes that the parties are referring not to a legal remedy, but to a mechanism to hold the funds, for example, an escrow account.

furniture.[18]  PJI would then pay the balance of $115,000.[19]

Pressman withheld PJI's deposit until he had received assurances that TOL and NFB had clear title to sell the furniture.  In response, Barefield emailed Tony Guhr on February 20, 2007, stating that NFB "owns and has full rights to liquidate the E&Y Atlanta furniture."[20]  Barefield also emailed Guhr and Pressman, attaching correspondence from November 2006 that evidenced the transaction between NFB and Ernst & Young's agent.[21]

On March 1, 2007, Pressman wired PJI's $115,000 deposit.[22]  Pressman later emailed Smith and Jacobs, confirming that PJI had wired the funds, and stating that he wanted to "gain access to the premises for purposes of further inspecting the furniture, and to bring [his] Project manager to look at the inventory together with several end user purchasers."[23]  At some point over the following weeks, PJI "discovered that the Furniture was approximately 15 years old," contrary to its belief at the time of contracting that the furniture was about 10 years old.[24]  On April 12, 2007, Pressman emailed Smith, demanding the return of PJI's $115,000 deposit.[25]  Despite this demand, the sellers refused to return the money, and thereafter sold the furniture to a third-party buyer.[26]

---

[18] Compl. Ex. A.

[19] Id.

[20] Pressman Aff. Ex. 4.

[21] Id. Ex. 6.

[22] Id. Ex. 7.

[23] Id.

[24] Compl. ¶ 16.

[25] Pressman Aff. Ex. 8.

[26] Compl. ¶¶ 18–19.

PJI has now brought this suit against TOL, NFB, Smith, Jacobs, and Barefield ("Defendants"), for breach of contract, conversion, fraud, and negligent misrepresentation. The Defendants have filed pre-answer motions to dismiss,[27] arguing that the Court does not have personal jurisdiction over them, and that venue is improper in the Eastern District of Pennsylvania. The issues are fully briefed before the Court, and are now ripe for decision.

**DISCUSSION**

**A. Personal Jurisdiction**

The Court begins its personal-jurisdiction analysis with Federal Rule of Civil Procedure 4(k)(1)(A), which provides: "Service of a summons . . . is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."[28]  Therefore, the Court looks to Pennsylvania's rules on personal jurisdiction. The Pennsylvania long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[29] Therefore, the Court's sole inquiry is whether the due-process clause of the Constitution permits the exercise of jurisdiction over these five out-of-state Defendants.

---

[27] Defendants TOL, Smith, and Jacobs have filed separately from Defendants NFB and Barefield. Both groups of Defendants, however, offer virtually the same arguments. Thus, the Court will treat their Motions together.

[28] There is no dispute that all five Defendants were properly served with a summons issued by this Court, along with a copy of the Complaint.

[29] 42 Pa. Cons. Stat. Ann. § 5322(b).

There are two types of personal jurisdiction over non-resident defendants: general jurisdiction, and specific jurisdiction. Although PJI argues that the Defendants are subject to general jurisdiction in Pennsylvania, it is clear that the record reveals no "continuous and systematic general business contacts" of the Defendants that an exercise of general jurisdiction must be based upon.[30] Thus, the Court looks to whether it has specific jurisdiction over the Defendants.

The Third Circuit describes the test for specific jurisdiction as a three-part inquiry. "First, the defendant must have 'purposefully directed [its] activities' at the forum."[31] "Second, the litigation must 'arise out of or relate to' at least one of those activities."[32] "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice"'"[33] The Court will apply this well-known "minimum contacts" analysis to Counts I, III, and IV of PJI's Complaint.[34]

**1. Breach of Contract**

Preliminarily, the Court notes that the allegedly breached contract, by its own terms, is an agreement between PJI and TOL. The end of the form reads: "Accepted by: Top of the Line

---

[30] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

[31] O'Connor v. Sandy Lane Hotel Co., Ltd., No. 05-3288, __ F.3d __, 2007 U.S. App. LEXIS 17932, at *6 (3d Cir. July 26, 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

[32] Id. (quoting Helicopteros, 466 U.S. at 414).

[33] Id. (quoting Burger King, 471 U.S. at 476).

[34] Count I is for breach of contract; Count III is for fraud; and Count IV is for negligent misrepresentation. For count II, which is for conversion, the Court will apply the "effects test" instead of the minimum-contacts test. See infra, pt. A.3.

Office Furniture," followed by the signature of "R. Brian Jacobs, President."[35] Thus, because TOL is the only Defendant that is a contracting party, the Court will analyze personal jurisdiction with respect to that Defendant only. Defendants Jacobs, Smith, Barefield, and NFB cannot be liable for breach of contract if they are not a party to the contract at issue.[36]

Taking PJI's version of the facts as true, as the Court must, it is clear that TOL purposefully directed its activities at Pennsylvania. While true that TOL sought a buyer through Guhr, whose agency is in Kansas, Guhr then connected TOL to Pressman, in Pennsylvania. TOL then reached out to Pressman through Smith's phone call, inviting him to come look at the furniture. While PJI's residence in Pennsylavnia was surely immaterial to TOL, TOL nonetheless "'purposely directed' [its] activities toward a Pennsylvania resident and thereby availed [itself] of the opportunity to do business there."[37]

The fact that TOL allegedly initiated the exchange with Pressman is crucial to the analysis. That fact sufficiently distinguishes <u>Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.</u>,[38]—a case that Defendants urge the Court to follow—from the facts before the Court

---

[35] Compl. Ex. A, at 2.

[36] Though the parties have not addressed this issue, the Court looks to the law governing the contract. Because the contract is for a sale of goods, it is controlled by Article II of the Uniform Commerical Code ("U.C.C."), as enacted by the jurisdiction whose law governs the interpretation of the contract. Article II of the U.C.C. describes contracts in terms of a buyer—"a person that buys or contracts to buy goods," U.C.C. § 2-103(1)(a)—and a seller—"a person that sells or contracts to sell goods," id. § 2-103(1)(o). According to the signed purchase order, the seller is TOL. Even accepting as true that the five Defendants became joint venturers for the purpose of selling the furniture, PJI has not explained how, as a matter of law, the other four Defendants can be considered sellers under Article II of the U.C.C. Although the joint venture may create fiduciary duties among the five co-venturers, PJI has not explained how all of the co-venturers can be properly named as defendants for the action of one co-venturer. Therefore, the Court concludes that PJI has failed to state a viable breach-of-contract claim against Jacobs, Smith, NFB, and Barefield.

[37] <u>Mellon Bank (East) PSFS, Nat'l Assn. v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992).

[38] 75 F.3d 147 (3d Cir. 1996).

now. Vetrotex was also a commercial breach-of-contract case, between a Pennsylvania fiberglass supplier and a California buyer. But in Vetrotex, because the Pennsylvania supplier had initiated contact with the California buyer, the court found that the buyer had not purposely availed itself of the protections and accompanying obligations of doing business in Pennsylvania. Thus, the Vetrotex court affirmed the trial court's decision not to exercise jurisdiction, emphasizing that it was "distinguishable" from those cases "where the defendant solicited the contract or initiated the business relationship leading up to the contract."[39] Here, by soliciting business in Pennsylvania, even through a single telephone call, TOL made sufficient purposeful contact with Pennsylvania to support personal jurisdiction.[40]

Next, the Court looks to whether the breach-of-contract claim arose out of TOL's Pennsylvania contact. Under Third Circuit precedent, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."[41] No great logical leap is required to infer that TOL's contacting Pressman in Pennsylvania was instrumental in forming the contract between PJI and TOL. It was the first in a chain of events that led to the contract itself. Therefore, for the purposes of determining personal jurisdiction, PJI's breach-of-contract claim arose out of TOL's contact with Pennsylvania.

Finally, the Court looks to see whether the exercise of jurisdiction over TOL comports

---

[39] Id. at 152. The court cited Mellon Bank (East) PSFS v. Farino as such an example—a case in which out-of-state borrowers were subject to personal jurisdiction in Pennsylvania because they had purposely reached into the forum by seeking credit with a Pennsylvania-based bank. See also IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 n.3 (3d Cir. 1998) (finding no minimum contacts where German defendant had not "entered" New Jersey, since phone calls between New Jersey and Germany were initiated by Plaintiff).

[40] See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) ("Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction as long as the other criteria are met.").

[41] GE v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

with fair play and substantial justice. Generally, "[o]nce the plaintiff has made out a prima facie case of minimum contacts, as here, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[42] To that end, the Supreme Court has identified five factors that guide a court's reasonableness analysis: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) the "shared interest of the several States in furthering fundamental substantive social policies."[43]

Applying these factors, there is no compelling case against exercising jurisdiction over TOL. First, although it is TOL's burden to demonstrate that jurisdiction in this forum would be unfair to it, it has not made such an argument in its brief. In any event, haling TOL into court in Pennsylvania is not unfair. The only factor weighing in favor of declining jurisdiction is the first—the burden on TOL. TOL, however, by availing itself of the opportunity to conduct business with a Pennsylvania resident, subjects itself to suit in Pennsylvania if the business that it conducts here later gives rise to litigation.

According to this record, TOL deals with other businesses in Mississippi, Georgia, and Kansas. Not surprisingly, therefore, it has not claimed that defending a lawsuit in a forum outside of South Carolina is an unreasonable burden. "Pennsylvania may not be the best forum—it may not even be a convenient one. But when minimum contacts exist, due process demands no more

---

[42] Grand Entm't Group, 988 F.2d at 483.

[43] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

than a reasonable forum."[44]  Therefore, the Court will exercise personal jurisdiction over TOL for PJI's breach-of-contract claim, but not over the other Defendants, who are not parties to the contract.

### 2. Negligent Misrepresentation and Fraud

According to PJI, Defendants committed the torts of negligent misrepresentation and fraud through Smith's email, which stated that the furniture had been purchased and installed in 1997 or 1998.  Again, the Court will limit its analysis of jurisdiction to TOL, the only Defendant who allegedly made a false statement.  The email from Smith to Guhr that contains the alleged misrepresentation is sent from the email address "topofthelineds@aol.com," which is clearly Doug Smith's address for TOL business.  The email also features a TOL logo below Doug Smith's electronic signature block.  Therefore, the Court construes this as a communication from TOL to Guhr, not from Smith as an individual.

Looking again to whether TOL purposefully directed its activities into Pennsylvania through this email, the Court concludes that it did.  By the time TOL sent this email to Guhr, it had already established Pressman as a potential buyer through Smith's phone call.  Therefore, TOL had to know that the information in the email would reach Pressman in Pennsylvania.  Indeed it is reasonable to assume that TOL sent the email for the specific purpose of communicating with Pressman in Pennsylvania.  Hence, the fact that TOL sent the information to Pennsylvania through an intermediary in Kansas is immaterial.[45]

---

[44] O'Connor v. Sandy Lane Hotel Co., Ltd., No. 05-3288, __ F.3d __, 2007 U.S. App. LEXIS 17932, at *32 (3d Cir. July 26, 2007).

[45] See Grand Entm't Group, 988 F.2d at 483 ("Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.").  The fact that Guhr states in an affidavit that neither he nor Adtech "served as the agent of either Ira J. Pressman or PJI" is irrelevant.  Whether Guhr believed that he was operating as

The Court also concludes that the claims for negligent misrepresentation and fraud arose out of this email from TOL to Guhr. According to the Third Circuit, there is no clear rule for determining whether an action sounding in tort arises from an out-of-state defendant's contact with the forum.[46] But the court of appeals described the "proximate cause" test as the most restrictive of the three, under which "the defendant's contacts must be the 'legal cause' of the plaintiff's injury."[47] PJI claims that it would not have entered the contract in the absence of Smith's representation to Guhr. PJI also claims that the age of the furniture was a dispositive factor in its decision to enter into the contract. Thus, Smith's email is the proximate cause of PJI's subsequent monetary injury. Hence, PJI's claims for negligent misrepresentation and fraud arise out of this Pennsylvania contact.

Finally, because the Court has already concluded that haling TOL into court in Pennsylvania is reasonable based on Smith's phone call to Pressman, the Court, for the same reasons, finds that it is equally reasonable to do so based on Smith's email to Guhr. Thus, the Court will also exercise personal jurisdiction over TOL for PJI's claims of negligent misrepresentation and fraud, but not over the other four Defendants who did not make any representations about the furniture's age.

**3. Conversion**

---

an agent or not is not important. What is important is that TOL gave information to Guhr in order to reach Pressman in Pennsylvania.

[46] O'Connor, 2007 U.S. App. LEXIS 17932, at *11 (holding that among the Circuits, "three approaches predominate").

[47] Id. (citing Mass. Sch. of Law at Andover, Inc. v. ABA, 142 F.3d 26, 35 (1st Cir. 1998)).

Finally, PJI claims that Defendants are liable for conversion of the $115,000 deposit that he sent to TOL. PJI does not refer to which Defendant, but states merely in its Complaint: "On or about April 15, 2007, Defendants converted to their own use the $115,000.00 deposit which they had promised to hold in constructive trust."[48] Looking to the record, the Court notes that Pressman sent an email to Doug Smith and Brian Jacobs dated March 1, 2007, which confirms that Pressman "wired the sum of $115,000 from my company, PJI Distribution Corp as the deposit for the EY Office Furniture pursuant to the terms of the Purchase Order from PJI and signed on behalf of Top of the Line."[49] The email does not describe where the money was wired. About six weeks later, Pressman directed another email to Doug Smith at his TOL email address, stating:

> Doug— Your response is not acceptable— You made material misrepresentations concerning this product. Your only response to me today was to offer to delay ½ of the balance of the payment. In view of your unwillingness to work out this matter and to discuss this appropriately, this will serve as a formal demand for the return of my $115,000 deposit. I expect to receive a bank check tomorrow for the return of my deposit.[50]

In conducting a personal-jurisdiction analysis for intentional torts committed outside the forum that have effects inside the forum, the Court is guided by the "effects test" announced in Calder v. Jones.[51] In that case, the Court upheld the exercise of jurisdiction in California over Florida journalists who had written a defamatory article about plaintiff—a California actress. Although the defamation did not arise out of defendants' contacts with California, the Court held that

---

[48] Compl. ¶ 27.

[49] Pressman Aff. Ex. 7.

[50] Id. Ex. 8.

[51] 465 U.S. 783 (1984).

jurisdiction was "proper in California based on the 'effects' of their Florida conduct in California. . . . Their intentional, and allegedly tortious, actions were expressly aimed at California."[52]

In IMO Industries, Inc. v. Kiekert, AG, the Third Circuit restated the Calder effects test as requiring a plaintiff to show: (1) that the defendants committed intentional torts; (2) that the plaintiff "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) that the defendants "expressly aimed" their tortious conduct at the forum "such that the forum can be said to be the focal point of the tortious activity."[53]

Applying the rule of IMO to this case, therefore, it follows that the Defendants are subject to personal jurisdiction in Pennsylvania through the alleged act of conversion. Because PJI expected its deposit money to be returned to it in Pennsylvania, it cannot be denied that the brunt of the harm was felt anywhere but in Pennsylvania. And the alleged dealings between Pressman and all of the Defendants establish that the Defendants would have known that PJI is based in Pennsylvana. Thus, it is clear that by intentionally taking PJI's money, Defendants also intentionally aimed their conduct at Pennsylvania. Accordingly, the Court will exercise personal jurisdiction over all five Defendants on this count of PJI's Complaint.

---

[52] Id. at 789.

[53] 155 F.3d 254, 265–66 (3d Cir. 1998).

**B. Venue**

Under 28 U.S.C. § 1391(a), a civil action based on diversity jurisdiction must be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Court concludes that venue lies in this judicial district based on the second prong of the statute. The Court has already held that PJI's claim for breach of contract against TOL arose out of Smith's phone call to Pressman. Similarly, the Court has concluded that PJI's fraud and negligent-misrepresentation claims against TOL arose out of Smith's email to Guhr, which was predictably forwarded along to Pressman in Pennsylvania. Therefore, because the Court has already held that Plaintiff's claims arise out of those contacts that TOL established with Pressman in Bryn Mawr, Pennsylvania, it follows inexorably that a substantial part of those same events that give rise to the claims also occurred in this judicial district.

Similarly, the Court considers the alleged loss of PJI's $115,000 deposit to be a substantial part of the events connected to his claim for conversion. Therefore, the Court will deny Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(3).

**CONCLUSION**

For the foregoing reasons, the Court concludes that it may exercise personal jurisdiction over all five out-of-state Defendants in a manner consistent with due process. Therefore,

the Defendants shall answer PJI's Complaint.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PJI DISTRIBUTION CORP.,**	:	<br>	:	<br>	**Plaintiff,**	:	<br>	vs.	:	**CIVIL NO. 07-1551**<br>	:	<br>**TOP OF THE LINE**	:	<br>**OFFICE FURNITURE, et al.,**	:	<br>	:	<br>	**Defendants.**	:	<br>	:	| |

### ORDER

**AND NOW**, this 4th day of September 2007, upon consideration of the Motion of Defendants TOL, Smith, and Jacobs [Doc. # 2], the Motion of Defendants NFB and Barefield [Doc. # 3], PJI's Responses thereto [Doc. ## 4, 5], Defendants' Reply Briefs [Doc. ## 11, 13], and PJI's Sur-Reply Briefs [Doc. ## 16, 18], and after review of the applicable law, it is hereby

**ORDERED**, that the Motion of TOL, Smith, and Jacobs [Doc. # 2] is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED**, that due to lack of jurisdiction, Counts I, III, and IV against Defendants Smith and Jacobs are **DISMISSED**; it is further

**ORDERED**, that the Motion of NFB and Barefield [Doc. # 3] is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED**, that due to lack of jurisdiction, Counts I, III, and IV against Defendants NFB and Barefield are **DISMISSED**.

All Counts of the Complaint **REMAIN** against TOL, and Count II **REMAINS** against Defendants Smith, Jacobs, NFB, and Barefield.  Defendants shall answer the Complaint

within twenty (20) days of the docketing date of this Order.

       It is so **ORDERED**.

                                         **BY THE COURT:**

                                         **/s/ Cynthia M. Rufe**

                                         _____
                                       **CYNTHIA M. RUFE, J.**